STEPHANIE M. HINDS (CABN 154284)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

MICHAEL G. PITMAN (DCBN 484164)
Assistant United States Attorney

    150 Almaden Boulevard, Suite 900
    San Jose, CA 95113
    Telephone:    (408) 535-5040
    Facsimile:    (408) 535-5081
    Email: michael.pitman@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>AMANDA CHRISTINE RILEY,<br><br>    Defendant. | Criminal No. 5:21-CR-00004-BLF<br><br>UNITED STATES' SENTENCING MEMORANDUM<br><br>Date:    May 3, 2022<br>Time:    9:00 AM<br>Place:    Courtroom 1, San Jose |

The United States of America ("United States") hereby respectfully submits the following Sentencing Memorandum regarding Defendant Amanda Christine Riley ("Defendant") pursuant to Crim. L.R. 32-5(b):

**I.    SENTENCING CALCULATION**

Trial courts, "while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing." *United States v. Booker*, 543 U.S. 220, 267 (2005); *see also Gall v. United States*, 552 U.S. 38, 51 (2007) (stating that the failure to calculate, or improperly calculating, the guidelines range constitutes a procedural error at sentencing).

Defendant has been convicted of one count of wire fraud in violation of 18 U.S.C. § 1343. The Guidelines provide that violations of Section 1343 should be sentenced under U.S.S.G. § 2B1.1.

Because wire fraud has a statutory maximum term of imprisonment of 20 years or more, the base offense level is 7 under U.S.S.G. § 2B1.1(a)(1). The Plea Agreement establishes that Defendant's fraud caused a loss of approximately $106,272.43, and no less than $95,001, and Defendant's offense level is consequently increased by 8 levels under U.S.S.G. § 2B1.1(b)(1)(E). Accordingly, the Plea Agreement and the Presentence Investigation Report ("PSR") agree that Defendant's base offense level is 15. The Plea Agreement and PSR also agree that Defendant should receive a three-point credit for acceptance of responsibility under U.S.S.G. § 3E1.1. Credit for acceptance of responsibility applies only to a defendant who "clearly demonstrate acceptance of responsibility for his offense." U.S.S.G. § 3E1.1. Here, the full three-point credit is appropriate because Defendant has truthfully admitted the relevant conduct sufficiently in advance of trial. Thus, the Plea Agreement and PSR agree that the total offense level is 13. Defendant's criminal history category is I. *See* PSR at ¶ 46. Based on a total offense level of 13 and a criminal history category of I, the Guideline range is 12-18 months' imprisonment.

## II. SECTION 3553(a) FACTORS

Pursuant to the Sentencing Reform Act, 18 U.S.C. § 3553 the Court "shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in" Section 3553(a)(2), and, in so doing, the Court "shall consider," among other things: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established by the guidelines; (5) any pertinent policy statement; and (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. *See* 18 U.S.C. § 3553(a).

## III. ANALYSIS AND SENTENCING RECOMMENDATION

Between 2012 and 2019, the Defendant pretended to have Hodgkin's lymphoma, a type of cancer. Although she was not sick, Defendant carefully cultivated a social media presence, using Facebook, Instagram, Twitter, and a blog, all of which she used to "document" her nonexistent medical

condition. Defendant went to great lengths to maintain her deception: She shaved her head to make it appear as if she were receiving chemotherapy; she falsified medical records, and forged physicians' letters and medical certifications; she convinced family-members to echo her false claims; she gave materially false testimony in several legal proceedings; and she attacked anyone who suggested she was malingering (going so far as to sue one of them). *See* PSR at 7-20, & 26.

Defendant maintained this ruse in order to take advantage of generous, trusting people, and she did so for many years. The Guidelines focus on the fact that Defendant stole money from her victims. Specifically, she used her social media presence to aggressively solicit donations, ostensibly to cover her medical expenses. In truth, of course, Defendant had no medical expenses. The donations she received were deposited into her personal bank accounts, and used to pay her living expenses. To date, the government has identified 349 individuals and entities who made contributions with a total value of $105,513 towards Defendant's fabricated medical expenses.

But the damage caused by Defendant cannot be measured by financial loss, alone. Yes, Defendant stole more than $100,000, but the consequences of her criminal conduct reach much further than that, as illustrated by the PSR's summary of the harrowing Victim Impact Statements. N.M.'s Statement describes the depths of Defendant's charade – "She evoked God constantly and how her prayers and those of others were healing her, it was a constant cycle of dying and miraculous recoveries for years while never missing the opportunity to collect more money." *See* PSR at ¶ 26. A.B., M.A., and S.D. all describes how Defendant exploited her fraud even in the most mundane aspects of life, using it to extract exorbitant personal favors from her victims, to avoid personal responsibility, and to secure "free sporting events, free childcare, free meals, free gifts, free gymnastic lessons, tennis lessons, and on and on." *See* PSR at ¶¶ 22, 25, & 27. A.B. describes how Defendant's fraud caused "immeasurable" damage to Defendant's own step-daughter (a cancer survivor herself), and poisoned the step-daughter's relationship with her mother, *see* PSR at ¶ 22, while N.M. describes the vindictive methods Defendant employed to avoid exposure, and troublingly suggests that Defendant may still be pretending to be ill to this day. *See* PSR at ¶ 26.

More poignantly, J.Z. (also a cancer survivor) describes how a terminally-ill man in a support group for cancer patients and survivors wasted some of his last hours on Earth comforting and

counseling Defendant through her nonexistent cancer rather than spending that time with his own family, *see* PSR at ¶ 24, and Pastor B.B. illustrates the sadly foreseeable consequences of Defendant's corruption: Members of her former congregation, having been defrauded by Defendant, now "turn away" from those in genuine need.  *See* PSR at ¶ 23.

These losses – which are more consequential than the financial losses Defendant caused – are simply not accounted for in the Guidelines calculation.  But they should be considered by the Court under Section 3553(a), which requires consideration of the nature and circumstances of the offense, and the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, and to afford adequate deterrence.  Accordingly, the United States agrees with the PSR's determination that a sentence at the high end of the Guidelines is appropriate, and agrees with the PSR's recommendation that Defendant be sentenced to a term of imprisonment of 18 months, and a three-year term of supervised release.

## IV.    RESTITUTION

The Mandatory Victim Restitution Act of 1996 ("MVRA") (largely codified at 18 U.S.C. § 3663A), makes restitution mandatory for certain crimes.  *See United States v. Kovall*, 857 F.3d 1060, 1064 (9th Cir. 2017) (the district court has no discretion under the MVRA and "shall order" restitution) (quoting 18 U.S.C. § 3663A(a)(1), (c)(1)(A)).  While the MVRA generally defines the victims entitled to restitution to include only those harmed by the "offense for which restitution may be ordered," the pool of victims is expanded when the Defendant's criminal conduct involves "as an element a scheme, conspiracy, or a pattern of criminal activity," in which case "victim" includes "any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern." 18 U.S.C. § 3663A(a)(2).  Wire fraud in violation of Section 1343 qualifies.  *See United States v. Lo,* 839 F.3d 777, 788 (9th Cir. 2016) ("[W]hen the crime of conviction is mail fraud or other crime requiring proof of a scheme, a court is authorized to order restitution 'on related but uncharged conduct that is part of a fraud scheme,' and is not limited to 'the harm caused by the particular counts of conviction.'") (quoting *United States v. Thomsen*, 830 F.3d 1049, 1065 (9th Cir. 2016)); *see also United States v. Johnson*, 875 F.3d 422, 425 (9th Cir. 2017) ("Wire fraud involves a scheme to defraud.  Accordingly, under the MVRA, restitution may be ordered for all persons directly harmed by the entire scheme and is

thus not confined to harm caused by the particular offenses for which [the defendant] was convicted.") (citation and internal quotations omitted, quoting *United States v. Booth*, 309 F.3d 566, 576 (9th Cir. 2002)).  Thus, the Court's restitution order in this case should not be limited to the single transaction underlying Defendant's conviction, but should rather include all the victims of Defendant's overall scheme.  To date, the government has identified 349 individuals and entities who made contributions with a total value of $105,513 towards Defendant's fabricated medical expenses, and Defendant should be ordered to repay each of these individuals and entities in full.

## V. CONCLUSION

The awful irony is that Defendant's victims would have supported her if she had simply asked them honestly for help.  Instead, Defendant made the conscious decision to lie to people who trusted her, and to exploit that lie for financial gain over a period of several years.  This conduct was a cynical betrayal of the victims' generosity, and it has fundamentally altered the victims' world-view.  Not only did Defendant draw valuable resources away from those in genuine need during the course of her scheme, she leaves in her wake an entire community of people whose ability to provide unskeptical assistance to those less fortunate has been destroyed.  In that way, Defendant's crime will continue to reverberate for years to come.  The sentence in this case should reflect the seriousness of the offense, provide just punishment, and afford adequate deterrence.  Defendant should be sentenced to a term of imprisonment of 18 months, a three-year term of supervised release, an order to pay restitution in the amount of $105,513, and an order to pay a special assessment of $100.

Date: April 26, 2022

Respectfully submitted,

STEPHANIE M. HINDS
United States Attorney

s/ Michael G. Pitman
MICHAEL G. PITMAN
Assistant United States Attorneys